IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LONNIE E. LARSON, | ) | CIVIL NO. 09-00308 SOM/BMK |
| | ) | |
| Plaintiff, | ) | ORDER DISMISSING COMPLAINT |
| | ) | |
| vs. | ) | |
| | ) | |
| LIBERTY MUTUAL FIRE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER DISMISSING COMPLAINT

I.      INTRODUCTION.

        This is not the first case Plaintiff Lonnie E. Larson

has filed in this court concerning workers' compensation

benefits.  Larson says he was rendered permanently disabled by

lightning that struck him while he was working for Altres

Staffing, Inc.  See Complaint ¶  6, 7 (July 7, 2009); see also

Larson v. Ching, Civ. No. 08-00537 SOM/KSC.  In the present

action, Larson sues for workers' compensation benefits without

having completed the ongoing administrative proceedings.

Defendant Liberty Mutual Fire Insurance Company, the workers'

compensation insurance carrier for Altres, moves to dismiss or

stay all claims against it.  This court grants the motion and

dismisses the Complaint.

II.     BACKGROUND INFORMATION.

        The exhibits attached to Liberty Mutual's motion to

dismiss or stay, as well as Larson's own statements at the

hearing before this court, indicate that proceedings before the State of Hawaii, Department of Labor and Industrial Relations, are ongoing and will determine Larson's entitlement to workers' compensation benefits.  These exhibits and statements further indicate that much of the delay at the administrative level relates to Larson's alleged inability to participate in the administrative proceeding and his unwillingness to undergo an independent medical examination.

The matter has been at the administrative level for many years.  On or about July 30, 2002, a hearing was scheduled for September 6, 2002, before the State of Hawaii Department of Labor and Industrial Relations to "determine whether claim is compensable."  See Motion to Dismiss, Ex. A (Jan. 25, 2010). This hearing was continued.  Eventually, Larson requested that it be cancelled.  See Letter from Dwight A. Kushiyama to Department of Labor and Industrial Relations (May 22, 2003) (attached as Ex. A to motion).

On or about March 31, 2006, the Department of Labor ordered Larson to appear for an independent medical examination. See Order of Director, State of Hawaii Department of Labor and Industrial Relations (Mar. 31, 2006).  A further hearing was scheduled before the Department of Labor and Industrial Relations.  This hearing was cancelled by Larson through his attorney, Charles H. Brower.  See Letter from Charles H. Brower

to Dennis K. Seino, Department of Labor and Industrial Relations (Dec. 8, 2006) (attached as Ex. A to motion).  On April 9, 2007, the Department of Labor and Industrial Relations wrote to Liberty Mutual and Larson's attorney, indicating that it was responding to Liberty Mutual's letter requesting a hearing regarding Larson's alleged obstruction of discovery attempts.  The letter noted that Larson was on the mainland but could appear at the hearing by telephone.  See Letter from Dennis K. Seino to Dwight A. Kushiyama (Apr. 9, 2007) (attached as Ex. A to motion).  The hearing was scheduled for June 19, 2007.  See Notice of Hearing (May 7, 2007) (attached as Ex. A to motion).

On or about June 18, 2007, Larson asked the Department of Labor to postpone the June 19, 2007, hearing.  See Letter from Charles H. Brower to Dennis K. Seino (June 19, 2007) (confirming conversation that was held on June 18, 2007) (attached as Ex. A to motion).  During the June 18, 2007, discussion of the postponement request, Brower indicated to Seino that Larson would voluntarily undergo the requested independent medical examination.  See Letter from Dennis K. Seino to Charles H. Brower and Dwight A. Kushiyama (June 20, 2007).  However, in May 2008, in a letter to Seino, Larson apparently said he would not attend the independent medical examination.  See Letter from Dennis K. Seino to Charles H. Brower and Dwight A. Kushiyama (May 29, 2008).

On August 5, 2008, a hearing was scheduled for October 2, 2008, before the Department of Labor and Industrial Relations to determine "whether claim is compensable" and the "temporary disability period." See Notice of Hearing (Aug. 5, 2008) (attached as Ex. A to motion).  On September 10, 2008, Larson asked that this hearing be postponed to the summer of 2009.  See Letter from Charles H. Brower to Dennis K. Seino (Sept. 10, 2008) (attached as Ex. A to motion).  On September 22, 2008, the scheduled hearing was continued.  See Notice of Hearing (Sept. 22, 2008) (attached as Ex. A to motion).

On December 1, 2008, rather than waiting for the hearing that, at his request, had been postponed to summer 2009, Larson filed suit in this court against the director of the Department of Labor and Industrial Relations, State of Hawaii. That lawsuit sought a ruling requiring the director to pay Larson workers' compensation benefits from a special fund created to pay claims when workers' compensation insurers are financially unable to pay the claims.  See Complaint, Larson v. Ching, Civ. No. 08-00537 SOM/KSC (Dec. 1, 2008).  On April 16, 2009, this court dismissed Larson's complaint, except for claims asserted under the Americans with Disabilities Act and the Rehabilitation Act. See Order, Civ. No. 08-00537 SOM/KSC (Apr. 16, 2009).   Larson amended his complaint on May 7, 2009.  This court dismissed the amended complaint on August 5, 2009.  See Order Dismissing First

4

Amended Complaint, Civ. No. 08-00537 SOM/KSC (Aug. 5, 2009).  On
August 24, 2009, Larson filed a second amended complaint, which
this court subsequently dismissed.  See Order Granting
Defendant's Motion to Dismiss (Oct. 5, 2009).  Judgment was
entered, and Larson appealed the matter to the Ninth Circuit
Court of Appeals.

          While still pursuing his claims against the director of
the Department of Labor, Larson has filed the present Complaint,
alleging that Liberty Mutual has breached its insurance contract
by unreasonably refusing to pay his claim (Count I), that Liberty
Mutual has refused in bad faith to pay his claim (Count II), and
that Liberty Mutual has violated the Americans with Disabilities
Act ("ADA") (Count IV).  Larson includes a claim for punitive
damages (Count III).

          On December 11, 2009, Liberty Mutual filed a motion to
dismiss and/or stay this matter.  Because Larson fails to
properly allege an ADA claim and because there is an ongoing
proceeding before the State of Hawaii, Department of Labor and
Industrial Relations concerning Larson's workers' compensation
claim, this court grants the motion and dismisses Larson's
Complaint.

III.      ANALYSIS.

     A.   Larson's ADA claim is Dismissed.

     To the extent Liberty Mutual seeks dismissal of the claim asserted under the Americans with Disabilities Act for failure to state a claim, the court analyzes the motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

     Under Rule 12(b)(6), review is generally limited to the contents of the complaint.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment.  See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).  However, courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  Documents whose contents are alleged in a complaint and whose authenticity is not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss.  See Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006); Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  Sprewell, 266 F.3d at 988.  Additionally, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint.  Sprewell, 266 F.3d at 988.  Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory.  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)).

"[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted); accord Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more

than an unadorned, the-defendant-unlawfully-harmed-me
accusation"). "While a complaint attacked by a Rule 12(b)(6)
motion to dismiss does not need detailed factual allegations, a
plaintiff's obligation to provide the 'grounds' of his
'entitlement to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a
cause of action will not do." Twombly, 550 U.S. at 555. The
complaint must "state a claim to relief that is plausible on its
face." Id. at 570. "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." Iqbal, 129 S. Ct. at 1949.

        Count IV of the Complaint asserts violations of the
ADA, which was enacted in 1990 to remedy widespread
discrimination against disabled individuals. PGA Tour, Inc. v.
Martin, 532 U.S. 661, 674 (2001). To effectuate this sweeping
purpose, the ADA forbids discrimination against disabled
individuals in major areas of public life, including employment
(Title I, 42 U.S.C. §§ 12111-12117), public entities (Title II,
42 U.S.C. §§ 12131-12165), and public accommodations (Title III,
42 U.S.C. §§ 12181-12189). Id. Liberty Mutual seeks dismissal
of Larson's ADA claims because the Complaint does not
sufficiently allege discrimination arising out of employment,
public service, or public accommodations. Larson appears to be

asserting claims against Liberty Mutual under only Title II
(public services) and Title III (public accommodations) of the
ADA, but not under Title I (employment).  <u>See</u> Complaint ¶ 28
(citing prohibition against public accommodation discrimination),
¶ 32 (referring to a violation of 42 U.S.C. § 12132, which
pertains to public entities), ¶ 33 (referring to a violation of
42 U.S.C. § 12182(b), which pertains to public accommodation
discrimination).

 This court dismisses Larson's ADA claim.

 1. <u>Title II Claims.</u>

 Title II of the ADA prohibits discrimination on the
basis of disability, providing:

> Subject to the provisions of this subchapter,
> no qualified individual with a disability
> shall, by reason of such disability, be
> excluded from participation in or be denied
> the benefits of the services, programs, or
> activities of a public entity, or be
> subjected to discrimination by any such
> entity.

42 U.S.C. § 12132.  To establish a violation under Title II of
the ADA, Larson must allege four elements:

> (1) he is an individual with a disability;
> (2) he is otherwise qualified to participate
> in or receive the benefit of some public
> entity's services, programs, or activities;
> (3) he was either excluded from participation
> in or denied the benefits of the public
> entity's services, programs, or activities,
> or was otherwise discriminated against by the
> public entity; and (4) such exclusion, denial
> of benefits, or discrimination was by reason
> of his disability.

<u>McGary v. City of Portland</u>, 386 F.3d 1259, 1265 (9th Cir. 2004) (quotations omitted).

 In essence, Liberty Mutual seeks dismissal of Larson's Title II claim because the Complaint fails to allege that Larson "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity."  Liberty Mutual argues that, as a workers' compensation insurance carrier, it is simply not a public entity.  This court agrees.

 Title II of the ADA defines "public entity" as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)."  Although Larson's Complaint contains a conclusory assertion that Liberty Mutual is a public entity, <u>see</u> Complaint ¶ 26, it is devoid of the kind of factual allegation required by <u>Twombly</u> and <u>Iqbal</u>.  Liberty Mutual, a private insurance carrier, fails to meet the definition of a public entity.  <u>See Williams v. Savage</u>, 569 F. Supp. 2d 99, 111 (D.D.C. 2008) (holding that an automobile insurance carrier was not a public entity because it was not a state or local government); <u>McDonald v. Mass.</u>, 901 F. Supp. 471, 478 (D. Mass. 1995) (noting that a claim against the General Accident Insurance Company for a

violation of Title II of the ADA was insufficient when the plaintiff failed to allege facts supporting his conclusory allegation that the insurance company was an instrumentality of the state).  The Title II claims are therefore dismissed.

2.    Title III Claims.

Larson appears to allege a violation of Title III of the ADA, 42 U.S.C. § 12182, which provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).  Liberty Mutual seeks dismissal of Larson's Title III claim because, except with respect to its office, it is not a "public accommodation."  This court agrees.

Title III of the ADA defines "public accommodation" as:

> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
>
> (B) a restaurant, bar, or other establishment serving food or drink;
>
> (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
>
> (D) an auditorium, convention center, lecture hall, or other place of public gathering;

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7) (emphasis added).

Although there is a circuit split on the issue, the Ninth Circuit has held that the "public accommodations" listed in § 12181(7) are all "actual, physical places" such that an insurance company that administers an employer's disability plan is not a place of "public accommodation."  In Weyer v. Twentieth

Century Fox Film Corp., 198 F.3d 1104, 1114 (9th Cir. 2000), for

example, the Ninth Circuit stated:

> The question then is whether an insurance
> company, like UNUM, that administers an
> employer-provided disability plan is a "place
> of public accommodation."  Certainly, an
> insurance office is a place where the public
> generally has access.  But this case is not
> about such matters as ramps and elevators so
> that disabled people can get to the office.
> The dispute in this case, over terms of a
> contract that the insurer markets through an
> employer, is not what Congress addressed in
> the public accommodations provisions.

Just as Weyer held that an insurance company administering an

employer-provided disability policy is not a "place of public

accommodation" under Title III, id. at 1115, Liberty Mutual is

not a "public accommodation."  Accordingly, the Title III claims

are dismissed.

3.   Retaliation Claims.

Larson asserts that Liberty Mutual, as a "private

entity," retaliated against him for having exercised his rights

under the ADA.  See Complaint ¶¶ 30-31, 34.  Liberty Mutual seeks

dismissal of these claims, arguing that the Complaint lacks the

necessary factual allegations to support them.  This court

agrees.

To survive Liberty Mutual's Rule 12(b)(6) motion to

dismiss, Larson's "factual allegations must be enough to raise a

right to relief above the speculative level, on the assumption

that all the allegations in the complaint are true even if

13

doubtful in fact." <u>Twombly</u>, 550 U.S. at 555 (citations and internal quotations omitted); <u>accord</u> <u>Iqbal</u>, 129 S. Ct. at 1949. That is, a complaint is not sufficient if it makes "naked assertions" devoid of "further factual enhancement." <u>Id.</u>

Larson's Complaint is devoid of factual allegations supporting his allegation that Liberty Mutual retaliated against him for having exercised his rights under the ADA.  Because the Complaint contains nothing more than what <u>Twombly</u> calls a "formulaic recitation" of the claimed retaliation, Larson's retaliation claim is insufficient and is dismissed for failure to meet the minimal pleading requirements.  Larson is given leave to file an amended complaint that properly alleges facts supporting his assertion that Liberty Mutual retaliated against him for exercising his rights under the ADA.

B.   <u>Larson's Remaining Claims are Dismissed.</u>

The remainder of Larson's Complaint asserts that Liberty Mutual breached its insurance contract by unreasonably refusing to pay his workers' compensation claim (Count I), that Liberty Mutual refused to pay his claim in bad faith (Count II), and that Liberty Mutual is liable for punitive damages (Count III).  Relying on the primary jurisdiction doctrine and the court's inherent power, Liberty Mutual moves for dismissal or a stay of these claims, pointing to ongoing proceedings before the State of Hawaii, Department of Labor and Industrial Relations.

Under the primary jurisdiction doctrine, courts may stay proceedings when issues involved in the proceedings are within the jurisdiction of and are under consideration by an administrative agency with extensive regulatory powers over the matter and the parties involved.  See Indus. Commc'n Sys. v. Pac. Tel. & Tel. Co., 505 F.2d 152, 156 (9th Cir. 1974).

The court also has the power to stay proceedings under the court's inherent power to control its own docket  See Landis v. North Am. Co., 299 U.S. 248, 254-55 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance"); Mediterranean Enter. v. Ssyangyong Corp., 708 F.2d 1458, 1465 (9th Cir. 1983) (the "trial court possesses the inherent power to control its own docket and calendar").

Because the State of Hawaii Department of Labor and Industrial Relations has exclusive authority to determine workers' compensation matters, and because no party would be prejudiced by allowing the administrative process to resolve the issues before it, the court dismisses the claims asserting that Liberty Mutual should have paid Larson his workers' compensation benefits.

15

Workers' compensation law is governed by chapter 386 of the Hawaii Revised Statutes.  Under section 386-71, the director of the Department of Labor and Industrial Relations "shall be in charge of all matters of administration pertaining to the operation and application" of chapter 386.  Section 386-73 provides that the director has "original jurisdiction over all controversies and disputes arising under" chapter 386.  Section 386-73.5 gives the director "original jurisdiction over all controversies and disputes over employment and coverage" under chapter 386.  When a workers' compensation claim is made, the director is charged with investigating the claim and rendering a decision.  See Haw. Rev. Stat. § 386-86.  This decision may be appealed to the Labor and Industrial Relations Appeals Board, and the decision by the board is appealable to the State of Hawaii Intermediate Court of Appeals.  See Haw. Rev. Stat. §§ 386-87 and 386-88 (effective until June 30, 2010).  An employer's workers' compensation "insurance carrier shall in all respects be bound by and subject to the orders, findings, and decisions rendered against the employer for the payment of compensation" under chapter 386.  Haw. Rev. Stat. § 386-125.

In dismissing Larson's claims against the director of the Department of Labor and Industrial Relations in Civil No. 08-00537 SOM/KSC, this court expressly recognized that the Department of Labor and Industrial Relations has exclusive

16

original jurisdiction over controversies arising under worker's compensation law.  See Travelers Ins. Co. v. Haw. Roofing, Inc., 64 Haw. 380, 387, 641 P.2d 1333, 1338 (1982) (stating that the "exclusive original jurisdiction of workers' compensation tribunals has also been confirmed in other settings"); see also Taylor v. Standard Ins. Co., 28 F. Supp. 2d 588, 590-91 (D. Haw. 1997) (noting that "all matters regarding the entitlement of worker's compensation benefits are within the *exclusive* original jurisdiction of the DLIR" and therefore holding that the federal court lacked subject matter jurisdiction to adjudicate workers' compensation claims).

In the present case, Larson is essentially claiming that he is entitled to workers' compensation benefits. Accordingly, the director of labor and industrial relations has "original jurisdiction" over Larson's claim.  Haw. Rev. Stat. § 386-73.  That director must decide whether Larson is entitled to workers' compensation benefits.  If the director determines that Larson is entitled to workers' compensation benefits, Liberty Mutual will be bound by that decision under section 386-125.  If Larson is dissatisfied with the director's determination of his claim, Larson's recourse is to appeal that decision to the Labor and Industrial Relations Appeals Board and then to Hawaii's Intermediate Court of Appeals.  This is not a case in which the director has already determined that Larson is entitled to

workers' compensation benefits and Liberty Mutual has refused to pay the benefits.  Instead, Larson has not finished the administrative process.  Notably, there is no allegation that Liberty Mutual is responsible for any delay in that process. Because Larson's claim regarding payment of workers' compensation benefits is within the exclusive jurisdiction of the director of the Department of Labor and Industrial Relations, and because no party has identified an "unfair disadvantage" that would flow from dismissal (as opposed to a stay) of the present case, the court dismisses Larson's remaining claims without prejudice.

Liberty Mutual notes that, under Jou v. National Interstate Insurance Company of Hawaii, 114 Haw. 122, 157 P.3d 561 (Ct. App. 2007), a stay of this case, rather than dismissal, might be appropriate.  After carefully considering Jou, this court determines that a dismissal is warranted.  In Jou, a doctor asserted that an insurance company had denied a patient's workers' compensation claim in bad faith.  Hawaii's Intermediate Court of Appeal held that the bad faith claim was originally cognizable in court and did not fall within the original jurisdiction of the director of the Department of Labor and Industrial Relations.  Id. at 127-28, 157 P.3d at 567-68.  The court of appeals noted that the state circuit court could have applied the doctrine of primary jurisdiction to stay the case pending resolution of issues within the special competence of the

Department of Labor and Industrial Relations.  Id. at 128, 157
P.3d at 568.

        Hawaii's Intermediate Court of Appeal explained that,
in Jou, a stay was more appropriate than dismissal because it
avoided the danger that a statute of limitations for bad faith
might run before the agency decided the underlying issues.  Id.
at 127, 157 P.3d at 567.  It noted, "Staying the proceedings
conserves scarce judicial resources by allowing an administrative
agency with expertise to decide the predicate issues.  The
agency's resolution of the predicate issues may reveal that there
is no basis for a bad faith claim or may satisfy the plaintiff
and obviate his or her need to further pursue the bad faith
claim."  Id. at 127, 157 P.3d at 567.  The Intermediate Court of
Appeals recognized that trial courts have discretion in
fashioning appropriate remedies when applying the primary
jurisdiction doctrine and may dismiss a case without prejudice
when no party will be "unfairly disadvantaged."

        Neither Larson nor Liberty Mutual will be "unfairly
disadvantaged" by dismissal of Larson's Complaint pending the
adjudication of his workers' compensation benefits before the
Department of Labor and Industrial Relations.  At the hearing on
the present motion, Liberty Mutual agreed that no prejudice would
flow from dismissal of this case.  This is not a case in which
any party has argued that a statute of limitations might run if

this case were dismissed.  Either, as Larson alleges in his
Complaint, Liberty Mutual denied Larson's claim in 2002 and his
bad-faith claim is already untimely, see Jou, 114 Haw. at 128,
157 P.3d at 567 (noting that a two-year statute of limitations
applies to torts during its discussion of a bad-faith denial of
insurance benefits claim), or no denial has occurred and the
limitation period has not yet begun to run.

        This court further notes that Larson did not pay any
filing fee to this court, given his in forma pauperis status.
Because no party has identified any prejudice if this court
dismisses rather than stays this action, Larson's claims seeking
payment of workers' compensation benefits are dismissed to allow
the Department of Labor and Industrial Relations to first decide
the matter.

        This ruling means that Larson should pursue his
workers' compensation claims before the director of the
Department of Labor and Industrial Relations.  If Larson filed
this action thinking he could thereby avoid the independent
medical examination ordered by the Department of Labor and
Industrial Relations or escape a hearing before that
administrative body, this court counsels Larson that any such
avoidance could be pointless.  If the present case went forward
in this court, Larson might be required to submit to an
independent medical examination as part of the discovery process

under Rule 35 of the Federal Rules of Civil Procedure.  He might also be required to participate in a trial that might exceed an administrative hearing in length.

IV.     LARSON'S REQUEST FOR APPOINTMENT OF AN ATTORNEY IS
        DENIED.

On February 3, 2010, just three working days before the hearing on this matter, Larson filed a request for counsel.  That request is premised on Larson's ADA claims.  Larson says that, because his medical condition has been at issue for a lengthy period, his case is complex.  This court denies Larson's request.

Larson initially argues that appointment of counsel is justified under 28 U.S.C. § 1915(e)(1).  However, a court may request counsel to represent an indigent litigant under § 1915(e)(1) only under "exceptional circumstances," taking into account the "likelihood of success on the merits" and the "ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved." Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir.1991) (internal citations and quotations omitted).  Larson has demonstrated no likelihood of success on the merits of any of his claims.  Larson has demonstrated an ability to articulate his claims pro se (both in writing and orally), and this court concludes that the legal issues involved in this case are not so complex that he will be unable to pursue his claims.  "Exceptional circumstances" supporting the appointment of counsel are lacking here.

21

Larson also contends that appointment of counsel is justified pursuant to Title III of the ADA, which gives this court discretion to appoint an attorney for a plaintiff.  See 28 C.F.R. § 36.501(a) ("Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the civil action without the payment of fees, costs, or security").  As discussed above, Larson demonstrates no likelihood of success on the merits of his Title III claims and has demonstrated an ability to proceed pro se.  There are no "just" circumstances supporting the appointment of an attorney for him to pursue an ADA claim.

The court notes that Larson does have an attorney in the workers' compensation proceedings.

V.      CONCLUSION.

For the reasons set forth above, the court grants Liberty Mutual's motion to dismiss without prejudice.  Larson's request for appointment of counsel (Docket No. 37) is also denied.

Larson is given leave to file an amended complaint that properly alleges facts supporting his claim that Liberty Mutual retaliated against him for having exercised rights under the ADA. Larson must file any such amended complaint no later than March 1, 2010.  If Larson fails to file an amended complaint by that

22

date, the Clerk of Court is directed to enter judgement in favor of Liberty Mutual and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 11, 2010.



 /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Larson v. Liberty Mutual; Civil No. 09-00308 SOM/BMK; ORDER DISMISSING COMPLAINT